## Whedon's Executor, et al. v. Belknap's Trustee, et al.

### (Decided June 19, 1917.)

### Appeal from Jefferson Circuit Court
### (Chancery Branch, No. 2).

1. **Wills—Intention of Testator.**—Where a will shows an intention of imposing a personal liability upon a devisee he becomes personally liable upon accepting the devise.

2. **Wills—Construction.**—But where the testator devised to his wife a particular fund, one-half in fee and the other half for life, with remainder to named devisees, and directed his wife out of the income from the whole of the fund to pay to his sister an annuity during her life, and the sister survives the wife, held that the will charged the income from the whole of the fund rather than the wife personally with the payment of the annuity.

ROBT. C. KINKEAD for appellants.

HOLT, CUTTING & SIDLEY for Mary B. Hawkes, et al.

WEHLE & WEHLE for James E. Thorndike, et al.

BURNETT, BATSON & CARY for Sophia H. Montague.

GIBSON & CRAWFORD for Fidelity & Columbia Trust Company, Trustee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

Dexter Belknap died testate in Louisville, Kentucky, in the year 1894. His will, so far as is involved in this litigation, provides as follows:

"Sixth: All of the balance of my estate of every kind and description, I give and bequeath to my wife, Sarah Jane Belknap, on the following conditions, to-wit: My said wife, out of the income of said estate shall pay to my sister, Sophia H. Montague, during the full term of my said sister's life, the sum of One Hundred Dollars per month, or Twelve Hundred Dollars per annum, from and after my death. If my said sister shall die during the legal infancy of her son John then said sum of One Hundred Dollars per month shall be paid to him until he becomes twenty-one years of age. The said annuity in favor of my sister and her son shall not be a charge on any real estate which I may own at the time of my death.

"Of the estate so devised to my said wife an equal half thereof shall be absolutely hers, to dispose of as she may deem proper, and the remaining half thereof shall

be held by her for her sole use and benefit during the term of her natural life, and at her death the same shall go to the Fidelity Trust and Safety Vault Company, as trustee, to be divided, as hereinafter provided. During the lifetime of my wife, she may hold, manage and control all of said estate so devised to her for her use, in such manner as she may deem best, and she shall have and exercise an uncontrolled discretion as to the character of investments she may desire to make at any time, and she shall not be required to give any security for the payment of the annuity to my sister, or for the preservation of said estate so that at her death it shall go as herein directed. She shall have power, as my executrix, to sell and dispose of and convey and transfer any real or personal property which I may own at my death and to invest and reinvest the proceeds in such manner as she may deem best, and I especially direct that she shall not be held responsible for any error of judgment or any misfortune that may happen in her management of the said estate.

"If my wife shall so desire and elect, she may, by agreement with the Fidelity Trust and Safety Vault Company, or by proper proceedings against it alone, cause a division to be made of the estate hereby devised and bequeathed to her, so that one-half thereof can be specifically set apart and known thereafter as the portion in which she has only a life estate, and which, at her death, is to go as hereinafter directed.

"The said Fidelity Trust and Safety Vault Company is authorized and empowered to agree and consent to such division of said estate, and it shall not be responsible for any error of judgment in agreeing to the same, but its action in that respect shall be final and conclusive. The division of said estate shall not, in any manner, affect the right of my wife to manage and control, as hereinbefore provided, that portion in which she has only a life estate. If my wife shall elect to do so, she may at any time after my death, turn over to the Fidelity Trust and Safety Vault Company that portion of my estate in which I have given her a life estate, to be held and managed by it according to its best judgment and discretion for her sole use and benefit during her life, and at her death to be disposed of as herein provided.

"I have the fullest confidence in the ability of my wife to judiciously manage and control my estate, and I am equally confident that she will respect and carry out all my wishes in regard thereto, and it is my will and

desire that in the execution of my will, and in the exercise of her discretion and judgment, that she shall not be interfered with in any manner whatsoever.

"Seventh: At the death of my wife, one-half of the estate above devised to her shall go to the Fidelity Trust and Safety Vault Company as trustee, provided she has not theretofore turned the same over to said company, to be disposed of as follows:

"If my niece, Sadie Belknap Fry, be living, I direct there shall be paid to her the sum of Two Thousand Dollars; if my nephew, Achif Bemis Barnes, be living, I direct that a like sum of Two Thousand Dollars shall be paid to him, and the balance of the half of my estate is to be divided into eight equal portions and allotted and transferred as follows:

"One portion to my niece, Mary Belknap, daughter of my brother, Stephen W. Belknap.

"One portion to her sister, Lucy Belknap.

"One portion of my sister, Sophia H. Montague, or if she be dead, to her son, John Montague.

"Two portions to my nephew, James Edward Thorndike.

"One portion to my nephew, Stephen D. Thorndike.

"One portion to my nephew, William B. Thorndike, and

"One portion to my niece, Lena B. Henderson." . .

His widow qualified as his executrix, retained the control and management of the whole of the residuary estate devised to her, one-half absolutely and one-half for life, and paid to his sister, Mrs. Montague, the annuity provided for by the will, until March 2, 1914, when she resigned as executrix, settled her accounts and turned over one-half of the residuary fund to the Fidelity and Columbia Trust Company as trustee, as the will provided she might do. Some time after her husband's death, Mrs. Belknap married Americus Whedon, and she died in June, 1915, leaving a will in which she named Americus Whedon executor and Elizabeth C. Wickersham executrix. This litigation is to determine whether, under the will of Dexter Belknap the annuity of twelve hundred dollars a year provided for Mrs. Montague, who has survived Mrs. Belknap, is payable out of the one-half of the residium of Dexter Belknap's estate devised to his wife absolutely, or out of the half devised to her for life, or out of both in equal portions. The chancellor held that the annuity was payable out of the half of the residuary estate devised to Mrs. Belknap absolutely and that no

part of same is chargeable, since her death, to the half in which she had a life estate, and this upon the ground that the will is unambiguous and shows clearly an intention of imposing a personal liability upon the widow for the payment of the annuity, in support of which position the chancellor, in his written opinion, cites the following authorities: Page on Wills, 1901 edition, sec. 673; 40 Cyc. 2054 and 2055; Curd v. Field, 103 Ky. 293, 45 S. W. 92; Holt's Extx. v. Deshon, 126 Ky. 310, 103 S. W. 281. The citation from Page on Wills is as follows: "The general rule laid down is that where the will shows an intention of imposing a personal liability upon the devisee he becomes personally liable upon accepting the devise." Accepting this as the correct statement of the rule of law upon which the chancellor rested his opinion, as it undoubtedly is, and is supported by the other authorities cited, does this rule of law sustain the court's decision? Does the will under consideration show an intention of imposing a personal liability for the payment of the annuity upon the widow? The sole question, as we see it, is: Does the will charge the wife or the income from the residuary estate, with the payment of the annuity? It is true that the property given to the widow was upon condition that "my said wife, out of the income of said estate shall pay to my sister during the full term of my sister's life," &c., but it is apparent from this very provision itself that the testator did not intend to impose personal liability upon the wife because he specifies how and out of what fund she was to make the payment, that is: "Out of the income of said estate," nor can there be any doubt of the estate, the income from which the testator meant to charge with the payment of the annuity, because the words "said estate" clearly refer to all of the residuary estate. Can it be doubted if Mrs. Belknap, during her lifetime, had spent all of her half of this estate which she owned absolutely and Mrs. Montague now sought to require payment of her annuity out of the half in which Mrs. Belknap had only the life estate, that her demand could have been successfully resisted? As stated by the chancellor in his opinion, "the testator clearly was providing for his wife and his sister" first and before all other devisees and in our judgment there can be no doubt but that he meant to charge and did charge the income from the whole of his residuary estate with the payment of the annuity to the sister during her life and to the support of his wife during her life, and that when these primary purposes were fulfilled

the corpus of the estate should go, one-half to his wife and the other half to the named remaindermen. It is evident, of course, that the testator, in the preparation of the sixth clause of the will, lost sight of the fact that his sister might survive his wife, but nevertheless he made it clear that he intended that his sister should have an annuity during the full term of her life and that he charged the whole of the income from his residuary estate with the payment of this annuity. There is nowhere in this clause or any other in the will any intention manifested to charge his wife with a personal liability to pay the annuity for when he charged his wife with the payment of it he specified that it was to be paid out of the income from the whole of his residuary estate. In the chancellor's citation from Cyc. we find the following: "Where a legacy is charged on all the land devised a devisee of part of the land becomes personally liable for only his proportional share of the legacy." If this part of the citation is correct, does it not demand that one-half of the annuity shall be chargeable to those who take the one-half in which Mrs. Belknap had only a life estate as well as those who take the other half in which she had an absolute estate? In both of the cases, Curd v. Field and Holt's Executor v. Deshon, cited by the chancellor, the devisees are charged with the payment of certain sums absolutely and not out of specific funds, so that upon accepting the devise they became, of course, bound for these payments; but this case is not like either of those because the testator here directed the payment to be made out of the particular funds and there is no intention expressed to charge the devisee personally with the payment. The same difference exists in the other cases cited by counsel for appellees and we need not therefore discuss them separately. The chancellor, in his opinion, and counsel for appellees, in their brief, refer to the fact that the testator, in the seventh clause, provided that the payments to appellees should be made at the death of his wife and that his sister, if living at his wife's death, is named as one of the remaindermen who were to receive the half in which the wife had a life estate, as supporting the position that the wife was charged personally with the payment of the annuity to the sister and as proof of the contention that the testator had not lost sight of the fact, when making his will, that the sister might survive the wife, but we do not think such importance should be attached to these provisions because it is easily conceivable that a testator might direct

the preparation of or prepare himself one part of his will with certain contingencies in mind, some of which were not in mind in the preparation of other parts of the will. The primal rule, in the construction of a will, is always to ascertain and give effect to the intention of the testator as expressed in the will, and we are convinced that the intention of the testator, as clearly expressed in his will, was to charge the income from the whole of the residuary estate with the payment of the annuity to his sister, and this is accomplished, of course, only by imposing that burden equally upon the half of that residuum that the widow took absolutely and the half that she took for life.

Wherefore, the judgment is reversed, and the cause remanded with directions to enter a judgment in conformity herewith.